In our second case this morning, number 23-1854, D.C. v. Fairfax County School Board, Mr. Morrell. Mr. Morrell. Mr. Morrell. Yes, sir. Mr. Morrell. I'm sorry. Mr. Morrell. Good morning. Mr. Morrell. Good to have you with us. Mr. Morrell. It's very good to be here. It's an honor. May it please the court. Mr. Morrell. You may proceed. Mr. Morrell. My name is William Morrell, and I represent the disabled students, their parents, and the organization HOV. For more than two decades, the Virginia Department of Education and the Fairfax County Public Schools have been violating the rights of disabled students throughout Virginia. Those violations include compromising the due process resolution system itself, which is a critical centerpiece of the IDEA. I'd like to talk about two issues here today. The first is the issue of futility, and the question is whether disabled students must pursue their claims through a corrupted due process system, even when the hearing officers in that system cannot possibly grant the relief they seek. The second issue that I'd like to discuss is whether it was appropriate for the district court to deny HOV representational standing based on a factor that has never been recognized by the U.S. Supreme Court or the Fourth Circuit. And the district court reached this conclusion even though, in this case, HOV met all three prongs of the nearly 50-year-old Hunt test. Starting with the issue of exhaustion, there are two independent bases for finding futility here. The first of those bases is the fact that the hearing officer could not grant the relief that the plaintiffs seek in this case. Can I ask you a question about the Chaplicks, I believe, who the district court dismissed for lack of exhaustion? Yes. Why do they have standing to bring this lawsuit? Well, they have standing because we are seeking only forward-looking relief. They are still in the system. Well, I guess, why are they allowed to sue? Maybe it's a statutory standing question, right? 1415, a party aggrieved by the findings and decision can sue, is that right? Yes. And that's the exhaustion requirement, but there is a futility exception. Well, no. 1415 I-2A is the right to sue, right, if a party is aggrieved by the findings that are made at a hearing or an appeal about their child's IEP, the denial of a FAPE, they can sue. Is that right? Yes, but the way that the statute has been interpreted in cases, for instance, like Heldman in the Second Circuit, is that parents have a right to go directly to federal court when it would be futile for them to pursue their remedy through the administrative process. If the Champlix, if their son had received a FAPE, if someone along the way in Fairfax County had agreed to their requests and agreed to cover the costs of the schooling that they requested, would they be able to sue? If, again, if it was on a forward-looking basis, if they had agreed to everything that they had requested, then I think there would be a standing problem in that case. So if they had pursued their rights in front of a hearing officer, and the hearing officer had agreed with them that Fairfax County was required to pay and to provide the IEP that the Champlix thought was appropriate to make sure their son got a FAPE, then they would have been satisfied. They would not have had grounds to sue under the IDEA. But in this case, they would have to... Is that... I just want to make sure that's right. If they got everything they asked for, then I'm not sure how they would have standing. But in this case, they went through a hearing system once, didn't get everything they had asked for. They went through a hearing system a second time, were assigned a hearing officer who they learned later had never ruled in favor of a parent over two decades. So they investigated all the hearing officers and found that 80% of the hearing officers in Northern Virginia over two decades had never... Right. And that's something that if they had then gone to a hearing officer and been denied, they could sue. And that could be one of the maybe strong arguments in their lawsuit, right? Is that the hearing officer who denied us what we were requesting in this exact case was biased or, you know, for various reasons. And you can tell that to a court and a court can grant relief that perhaps the hearing officer herself couldn't have granted. But the reason the IDEA lets the hearing officer hear it first is the hearing officer may be able to resolve all their problems by granting their child a FAPE, even though on appeal you could then raise arguments about, you know, the bias of the system itself. Yeah. But you're, again, taking away the ability to address the systemic problem with the hearing officer system. No. There's no, no one's taking that away. You exhaust the remedies like the IDEA requires, and then you can come to court and say, we were denied, we exhausted our remedies and the hearing officer system is totally corrupt and that's why we lost. And can sue on that, include that among the reasons for the lawsuit, right? But if the hearing officer can't grant the relief that you seek, which is to correct the system in Virginia, and we've pled extensive details about the problems in Virginia and the interference that Virginia Department of Education, Fairfax, and other school districts have had in the hearing process, such that it doesn't create a fair and impartial hearing, and the hearing officer can't grant the relief to correct that system, to change those regulations and to change order Virginia to implement. But doesn't all of that have to be in service of getting their child a faith? I mean, the IDEA, all that Supreme Court has told us that what it does is give parents and children the right to a free and appropriate public education, and that that's the relief it affords. And in your complaint, every single count is an IDEA count. There's two under the Constitution, but they specifically say, you know, our rights under the IDEA. So I'm just, you may have these systemic claims, but you're suing under the IDEA, so everything has to be in pursuit of the remedy that the IDEA gives. And maybe that correcting the whole system is the way to get this child a faith, but that's the reason they can sue, and that's the relief they're seeking at the end of the day. But the courts have repeatedly said that the procedural aspects of the IDEA are critical to the provision of a faith. And in this case, the procedure, the main procedure by which parents can protect themselves has been interfered with and is not an impartial proceeding. And so if you would require every parent to go through that process, a process where the hearing officer cannot fix the system, you're essentially creating an impossible, there's no way to fix the system. And the other thing is parents don't know when they go through. I just, again, I'll let you move on to everything, but I don't see how that's true. Exhausting remedies doesn't mean you don't get any remedies, you exhaust them. And if if the administrative agency denies you a remedy, then the statute says you can sue. So those all of these systemic remedies that you seek would be available as long as they follow the steps required by the statute. Right. But if you if you take make the requirement that you proceed through the administrative remedies, even when it's futile to do so, you write the futility exception out of. Out of the law, and it's well established in the law, both generally and under the IDEA. And I would like to refer the court to the opinion in the Second Circuit and Heldman with a very, very similar case, a case where the issue was the hearing appointment, the hearing officer appointment process and abuses in that process. The court in Heldman said it was an exercise in or was the exercise in futility to go through the process when the hearing officer can't make the can't order the state to make the regulatory and procedural changes that would be necessary. Is that the one where they were challenging the state statute? They were challenged. Well, the defendants claim they were challenging the state statute. It was a regulation that gave the local education agency the right to appoint the hearing officer. But there was abuse in that process and the local education agency was having their attorney who represented them in the case recommend individuals. And they'd recommended one with a conflict of interest and another one was recommended by the one who was recommended by the conflict of interest. So it was a combination of the regulation and the implementation of the regulation, which is exactly what we have here. I'd like to also just briefly touch on a few other issues. One is the details in the complaint. And I think it's important to understand how the VDOE and Fairfax County and other local education agencies have affected this system. There are the Virginia Department of Education places two hearing monitors. There are only two in the entire state. And they oversee, one of them oversees each hearing. And as we plan in the complaint, one hearing officer who, after he ruled in favor of the school, was removed as a hearing officer, explained that during that process, the monitor, one of the two monitors in the state, in multiple ex parte communications, tried to convince him to rule in favor of the school and against the parents. After that hearing officer ruled in favor of the parents, at least partially, he was removed as a hearing officer. And he rarely did that. In another instance, we have a monitor who was having significant influence over the hearing officer. And the hearing officer was deferential to that monitor and relied on him for guidance. These are people who should not be participating in the hearings at all. And following that, that hearing officer, who is a hearing officer in both D.C. and Virginia, rarely rules in favor of parents. And in Virginia, that hearing officer rarely rules in favor of parents. We also cited in the complaint a number of other issues, such as hearing officers backdating opinions so that they could meet the timing requirements, the IDEA, with full knowledge of VDOE. When this issue was raised with VDOE, you know what VDOE told the parents, counsel? They told the parents, counsel, well, if the opinion is dated two weeks earlier, you better file your appeal two weeks earlier. Nothing happened to that hearing officer. And there are a number of other issues that we lay out in detail in our complaint that show that this system is broken. And we believe we have plausibly alleged a system that where VDOE and the local education agencies are putting their hand on the scale so that hearing officers believe they have a financial or personal or professional impact. And so it's no doubt or it's not surprising, I guess, that the statistics show what they do. That it is, Virginia is by far the worst state for parent success rate. And more in the entire state of Virginia, more than 60 percent of the hearing officers for more than two decades never ruled in favor of a parent. And it's 80 percent in northern Virginia. So I certainly encourage you to, I know our complaint is long, but there are lots of examples of problems with the system that have had a dramatic effect. I'd like to touch briefly on associational standing. And the associational standing should be determined under the three-prong hunt test. And the court, the district court in this case, found the first two prongs were clearly satisfied. And the third prong, the district court and the third prong is the neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. And the court essentially found in its footnote two of its opinion that individual participation was not required. So the actual language of hunt is satisfied. But what the court did is it went on then to say that exhaustion was a credential and administrative concern that should be considered. But that is not a, the court does not have the, sorry. May I briefly go into a little bit of my rebuttal time? Certainly. Okay. So the court went on to essentially say that a prudential and administrative concern that the district court could come up with would be sufficient to find the third prong not satisfied. But the Supreme Court and the Fourth Circuit have never gone outside of the basic specific. Just to, I thought that what the court was saying was that as the Supreme Court has said associational standing is a, it's a version of representational standing, right? When are we, as a prudential matter, when is it appropriate to let a third party, let someone raise the rights of a third party? And an association can stand in the shoes of its members. But I thought the district court's concern was that there's no one's shoes to stand in here because no one had exhausted or had non-duplicative litigation to raise. Now, there probably are people, other members of HOB whose shoes it could stand in, but they weren't presented to the district court. That it's, that it was that prudential concern that was underneath its opinion. Yes, the court said that, but that's not a factor in the Hunt test. The Hunt test is... Is that excluded? Is it, a court can't consider that what, that representational standing requires that you're representing someone who could sue? There's, there's nothing. I guess the answer is it, you would be adding a new criteria to the Hunt test and there's not any support for adding that new criteria. And, and if I may, I'll, unless the court has another question, I'll reserve my time, the remainder of my time. Very good. Mr. Schwarzmark, Box. Thank you, Judge King. Good morning, and may it please the court. Brian Schmalzback for the Virginia Department of Education. This case is about the rules of the road for designing an individualized, free, appropriate public education. Instead of encouraging knee-jerk litigation in federal court, Congress invited families into a collaborative administrative process. But plaintiffs rejected that invitation because they say the due process hearing officers that they interacted with were biased. So they want to litigate that bias question off-road, as it were, outside of the dispute resolution pathway that Congress created for this purpose of getting to a fate. This court should affirm because Congress's sensible approach lets plaintiffs seek all the relief that they have standing to demand here. I'll address, as my friend on the other side did, the chaplix first, and specifically why it was not futile to bring these bias allegations in the administrative process where they can seek a favor. So first, there's nothing special about bias challenges to due process hearing officers. This is the sort of thing that district courts hear all the time, a motion to recuse. And the way our system works is that that district court, the district court that is alleged to be biased or partial or otherwise an inappropriate adjudicator, will hear that motion first, obviously with the backstop of appellate review. And the same is true here. A due process hearing officer can hear a motion to recuse, subject to review by the district court in the administrative appeal that Congress set forth in Section 1415I. And that's not a hypothetical, Your Honor. That's what the chaplix did. In their first due process hearing in 2015, they did indeed bring a motion to recuse. But they, for reasons of their own, decided not to appeal that to the district court following the due process. And that's also the right procedure under Virginia's hearing officer system rules, which are supervised by the Virginia Supreme Court in the Office of the Executive Secretary. And what those rules say is that the hearing officer hears the disqualification petition in the first instance, just like the chaplix did back in 2015 and could have done in 2021 if they had decided to complete the process of exhausting their administrative remedies. And after that, in addition to seeking disqualification, they would, of course, be able to appeal that to the district court. They can also go to the Executive Secretary of the Virginia Supreme Court and make their case, file an affidavit that says, this hearing officer is biased. They can use all the allegations that they use in their lengthy complaint here in support of that argument. And they have that access to relief through the Executive Secretary. And more broadly, even beyond a disqualification for a specific matter, if the plaintiff's concern is that there is systemic bias in the hearing officers, they can actually ask for those hearing officers to be removed from the rotation of due process hearing officers altogether. That's also supervised by the Executive Secretary of the Virginia Supreme Court. But again, the plaintiffs have decided not to seek that avenue of relief. Your Honor, my friend mentioned Heldman, which is the Second Circuit's decision. And Judge Russing, you're just right. That case is about a New York statute that I would describe as not involving best practices for the selection of hearing officers, which says that the local education agency gets to pick their own hearing officer. Essentially, you get to pick your own judge, which is not best practices. But the reason that that case did present a case of actual futility is that a hearing officer could not say, yes, I suppose I am biased. I'm going to recuse. Because that statute and the regulation implementing that statute gave that local education agency, that school board, the right to pick them. So it's not a case where the hearing officer can solve the problem by recusing. In the way that the hearing officers can solve that problem here. And I note that Virginia's system is very different from that. It's not the school board that picks the hearing officer. There's a request made to the Executive Secretary of the Virginia Supreme Court who will go through the rotation of hearing officers and select one for them. So this case doesn't present that same problem. Can I ask you about the plaintiffs say, you know, in the process for the hearing officers, you know, their adversary is the county and the school system, but that they can't, there's no way to reach the state. If the adversary is not the state in that context, and only by suing can they bring these claims against the state. Can you address that distinction between the county and the state? So it is true that the state or veto is not a party to that administrative, to that due process hearing. However, that due process hearing supervised by the hearing officer isn't the end of the story. Because what Congress said is that you can go from there to district court sitting in an administrative appellate capacity. And at that point, they could join veto, they could seek the relief that they seek here. So they're right on the first part, but they omit the second part, which is that they do have access to any additional relief that may be needed as to veto through the administrative appeal. But I would note, Judge Rushing, that a part of the, a problem with the breadth of relief that they seek is that they don't have standing to seek all that relief. For example, they're not alleging that they were personally affected by, you know, the FOIA allegations that they raised in the complaint. They weren't personally affected by any problems with other hearing officers beyond the ones that they specifically dealt with. And so in a process that's designed to create a faith at the end of the day, you need to address, you only have standing to address any hearing officers who affected your attempt to seek a faith. Well, presumably they're hoping that the class would be certified and the class would include all of the children who have been before all these other hearing officers who had nothing to do with their children's cases. And yes, Your Honor, I assume if they follow the proper path that Congress laid out, they go through the administrative process, they go to the federal district court in its administrative capacity, just like the Binghams did, went to Judge Ellis, then at that point they could seek class certification. That's a pathway that would be open to them at that point, having exhausted the process so that they can determine in the first instance whether they received a faith or not. But the problem with the Chaplakes is that they haven't given that process a chance. So we don't even know if they're aggrieved under Section 1415 I-2A because they haven't given that invitation from Congress a chance to work yet. Is that case still pending before Judge Ellis? No, Your Honor. That case is resolved in front of Judge Ellis. He wrote a very lengthy opinion laying out all the facts and the hearing officer's determinations and specifically said that that hearing officer, the hearing officer that heard the Binghams' administrative appeal, had done an exemplary job, went above and beyond what this Court's precedent requires in terms of addressing the party's arguments and the evidence presented at the hearing. Your Honor, if you have no other questions about futility in particular, I do want to just briefly address one argument that they make about Luna Perez, which is the recent Supreme Court case. Luna Perez, we think, is a great case for us that helps us here. It requires exhaustion here because the question in that case is, is the remedy the plaintiff seek one that the IDEA provides? And Judge Rushing, I completely agree with you that all of the counts that they have are either facially IDEA counts seeking IDEA relief, like injunctions, declaratory relief, classic IDEA relief, or there are other claims that are, in effect, seeking the same relief, seeking IDEA relief, such that the gravamen of the claim is IDEA relief. That sort of relief, declaring noncompliance or enjoining compliance with the IDEA, that's obviously IDEA relief. And if there's any question about whether they can get that through the administrative process, I think that question is resolved by Section 1415 I2C, which says that the district court can award, quote, such relief as the court determines is appropriate, which is a broad grant of equitable power that the district court, in its administrative capacity, administrative appellate capacity, could use to grant them this sort of relief. Yeah, I was a little confused about why y'all were, everybody's talking about Luna Perez here because it's, that's a, it's interpreting a provision that says, you know, you have to exhaust your IDEA claims if you bring an IDEA claim. And if you bring a claim under a different statute, you also have to exhaust that under the IDEA if it relates to, you know, certain kinds of relief or denial of a fape, etc. But there's no dispute that these are all IDEA claims in this case. We're not even under a different federal statute. I completely agree. Okay, I thought you all knew something about Luna Perez that I didn't know, but okay. No, I think you hit the nail on the head. Um, if there's no other questions about the Chaplix, I would like to briefly address the organizational standing issue. What that organizational claim is doing here is it's trying to launder the defective claims of the individual plaintiffs through an organization to get around those defects. And the district court was quite right that that's not what organizational standing associational standing can be used for. Particularly here, where the only identified members of that organization are the Chaplix and the Binghams, whose claims were had these independent defects. And so it would just be a way to whitewash the defects with those individual claims. Your Honor, what the plaintiffs are asking for is for this court to create a circuit split with the First Circuit and the Parent Professional Advocacy case. I heartily commend that case to you. It lays out why this is an appropriate factor to consider under the associational standing analysis. The Supreme Court has not said that you cannot consider this. What the Supreme Court said in the United Food case is that in that third prong of the associational standing test, we do look at things like matters of administrative convenience and efficiency. We're not precluded from considering important factors like, is there no one for the organization to stand in the shoes of? Because that's what the organization would be doing here. It would be standing in the shoes of the Chaplix and the Binghams who just have not taken advantage of Congress's invitation to use the proper administrative exhaustion process. And as the First Circuit, I think, correctly notes is that if you adopt the plaintiff's test, if you adopt the test that the First Circuit rejected, then you create this enormous incentive to gin up ad hoc organizations to substitute in for plaintiffs who can't bring their own claims for reasons just like these, for failure to exhaust. Your Honors, I'm happy to answer any questions you have about futility or the Binghams or the organization. But if you have no further questions, I'll turn it over to my colleague. I have one question about futility. It's addressed that they're alleging that things like, for example, I'll just put this in Ben, if you will, in futility, that inflation of evaluations or inflation of meaningful progress. Yes. Things like that. What about that? You're saying that can't be addressed in this sense? That could be exhausted? That's... Absolutely, Your Honor. Not only can it be exhausted. The Binghams did raise that allegation in their administrative process and in their administrative appeal to Judge Ellis in that separate MB case. So that's a great example of something that can and should be taken care of through the administrative process that Congress laid out. What about the numbers in terms of percentage of times that the hearing officers rule against the parents? Is there some point where we find it statistically improbable that you would have such a prevailing loss that is recognizable? What's your response to that? So, no, Your Honor. I don't think the numbers themselves can be probative of that. I'm going to get myself in trouble if I try to... Even 100% wouldn't have any statistical significance either? So there's clearly selection effects going on. There's clearly reasons why that is happening. And they say, well, the numbers... Explain what you mean by selection effect. Because it is only those parents who are unsatisfied with the earlier part of the administrative process. So you question their numbers because I thought their numbers were for... That the base was all of the hearing officers countywide, their results. So these are results of just the people who are dissatisfied. These are the results of people who go to the due process hearing. Because... Oh, I see. I see. These are people who have percolated to that point. That's right. So you call that the... It's a sort of stilted, if you will, type of set you have. That's right, Your Honor. Very likely you would have more people, of course, not winning because they have lost to the point where they had to use that point. Basically what you're saying. That's right. It's like a pyramid and we're getting to the tip of the pyramid where the base of the pyramid is everyone who goes through the IDA process under Section 1415F. And then you have the people who are unsatisfied still and they go to a hearing process. But we're even above that because we're not talking about people who... Parents who withdraw their claims or settle their claims, which is a lot of them, including the Chaplains in 2015. The result of that was that they settled. And as a result, they did achieve a private placement of their son in a private school, a private facility. And so, yeah, we're talking about a very small number. Okay, that's one. Thank you, Your Honor. Thank you very much. Ms. Judkins. May it please the Court. Julia Judkins and my colleague on the brief, Jean-Marie Burke, is also here representing the school board and Dr. Reed, the superintendent who's been sued. I'm relying on the fact that Judge Nachmanoff, he addressed all the issues that are relevant here. And he concluded that the Chaplains had failed to exhaust their available administrative remedies. He considered their arguments about the hearing officers for whom we are not responsible. We don't select them, control them, et cetera. And he said they had not raised a justiciable question about futility or bias. And it was clear that they should have exhausted the administrative remedies. And the system works based on what happened with the Binghams. They were not at that point that they were in court. They were in court, but it had not been concluded when the case was heard by Judge Nachmanoff. He said it was duplicative litigation. Now we have the benefit of Judge Ellis' decision that came out last August. And it's very lengthy. It's very detailed. He went through all of the hearing officers' determinations. There's a large transcript. There were a large number of witnesses. And that's how the system is supposed to work. There are witnesses for both sides. There are opinions by educators. And he concluded that what they got a fate. It may not have been the ideal fate. And he recognized that the parents, these parents care about their kids. And they want the best. And they seek out the best resources. But the law requires something that they are not really satisfied with. Judge Ellis said they wished that the IDEA provided more. That's why they were unhappy. Because they were getting a reasonable IEP designed for their children to succeed with the capabilities they had. But it isn't ideal. And Judge Nachmanoff said the same thing. They want perfect. They want better. They want the best. I can't blame them for that. But the law doesn't require that. And the process worked. With the bands. I don't think anybody can accuse Judge Ellis of being biased in favor of anyone, actually. And certainly not of any party here. So by virtue of not having done the process, the Chaplicks avoided their claims being litigated at that point. So they filed this. And in this case, they asked, they were asked questions and conceded that if the system is all changed, we'll be at a hearing. We want the system changed so we can go back and have our hearing. But that's not the way the government designed it. They should have gone through the process. And they would have then had a record. Record for a U.S. District Court judge to review. But you can't sidestep the process by putting your claims on hold and trying to go to court saying other things about other cases. So, in fact, the school system has policies, written policies. They haven't identified specific policies or laws or regulations that are denying anyone a fate. They have the same policies as outlined by the federal statute and the state's statutes, which follow the federal guidelines. So there is no claim against the school board. And certainly not Dr. Reed, because in an IDEA case, she would not be a proper party. We put in our brief that I guess they're trying to say also another claim against the school board. But they don't have that claim under the IDEA. This is an IDEA case, both of them, and nothing else. And you have to follow the statute. You have to follow the rules. And they had plenty of opportunities to raise the issues that are primary here, bias, it seems, in hearing officers and did not. And case over is our position. This case, the decision of Judge Nachmanoff should be affirmed as to the school board and Dr. Reed. My time is up. Thank you very much. Thank you. May I please the court? Your Honor, this is not a case where the plaintiffs have tried to avoid completely the administrative process. Both of the plaintiffs in this case have tried to go through the administrative process. The Chaplicks, both of them went all the way to a hearing, only to find out later that the entire system is structured and implemented in a way that incentivizes bias by the hearing officer. The critical point of the IDEA, one of the critical points, is that you get a fair and have no personal or professional interest in the case. We've, I think, demonstrated very clearly in our complaint that VDOE and Fairfax County and other school districts have put their hand on the scale. We're not going, the remedy of challenging a particular bias in a particular hearing, especially when some of these communications that we've identified are ex parte and we're not known by individuals during that hearing. How could you possibly address that by trying to challenge bias in an individual case? It's only after a year and a half of investigation, more than a million dollars in attorney time, it took to develop and find the information that's pled in our complaint and to bring this case before this court. That's not something that anyone, any individual, any parent has the ability to do. This is the only way to challenge the biased system. You can't do that through an individual claim. They've said you can't even bring VDOE, who is the most responsible here, into a due process. Sorry, you said you can't do that through an individual claim. But, I mean, we understand the IDEA doesn't, there's no other way to bring a claim, right? There's not like a citizen's attorney general provision or anything. It's only a person aggrieved who can bring a claim, right? Now, many persons aggrieved can join together to form a class, but they're each only bringing their own claim, right? They can't bring other people's claims. You do have the Supreme Court recognized associational or representational standing, and that's one of the things that the court has said is the reason that it acknowledges standing in that case is so you don't have to go through item after item after item, and every individual who has the same grievance have to bring that claim. And that's why the third prong is so important, is because it says that you have to be in a situation where you don't need the individuals in order to resolve the case. And the district court in this case said that it wasn't necessary to have the individuals. That is exactly the opposite of the First Circuit in parent professional. And if you, you know, often when we look at cases, we look, we go straight to the paragraph or the quotes that we see in a brief. If you do that, you find a quote that talks about exhaustion. But if you read the case, you'll see that long before they get to the paragraph discussing the exhaustion issue in the context of standing, the court was went through exclusive or extensive discussions of the individual nature of the claims in that particular case and said that individuals were necessary in parent professional. And in the second to last paragraph of parent professional, which I encourage you to read, the court specifically addresses the third prong of Hunt and says exactly that individual determinations would be necessary for this case. And for that reason, as we said earlier, representational standing cannot apply. I mean, that might be a problem you have here with respect to some of your claims about, you know, the way that hearing officers rely on one side's expert testimony, but not the other. Or some of these are very specific to individual cases. Now, you might have claims that that are bigger and broader than that if you're challenging the way that Virginia hires and fires them. But yeah, I think that the key, the key is I see it in this case is that there's a threshold problem, which is the most critical factor of the IDEA for parents to enforce their rights is a due process hearing. And if that system is broken, if that system is structurally biased because of the way VDOE and local education agencies put their hand on the scale and interfere with that process with these monitors who sit in the hearing and then influence the hearing officer. If that critical piece of the IDEA is broken, then you can't get the relief you seek. There is no discovery in IDEA proceedings in Virginia. You often don't know what's going on behind the scenes. The process itself, you can't fix that process by going through that process. You have to come to federal court. But can't you bring additional evidence in federal court after you? My recollection of IDEA cases is even after you exhaust from the hearing officer, you take your case to the district court and the district court can accept additional evidence and reviews everything to know about, right? It can accept additional evidence, but it gives great deference to the hearing officer. So think if you have a biased hearing officer, credibility is the ultimate determination. Yeah, but some of that additional evidence could be evidence that this corrupt, right? I'm sorry, I'm out of time. Yeah, you can answer me, I think. Thank you, Your Honor. The ability to bring additional evidence in district court is incredibly limited. While it is, there's the possibility that the court can allow it, it is very restricted. And you usually don't have that evidence. I mean, all of this evidence that we have here was developed long after we found it. Because you don't have, I mean, nobody's going to, it's not going to be obvious from the opinion itself, if somebody has, in a biased way, determined that the school's witness was more credible. So the structural problem is really what we want to get at. Thank you very much, sir. Thank you. We'll come down and bring counsel and then we'll take a short break. This honorable court will take a brief recess.
judges: Robert B. King, Roger L. Gregory, Allison J. Rushing